# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# GAINESVILLE DIVISION

VERNON BOWDISH, :
:
    Plaintiff, :
:
v. : CIVIL ACTION NO.
: 2:11-CV-00259-RWS
REGIONS BANK (Dahlonega), :
REGIONS BANK d/b/a REGIONS :
MORTGAGE, REGIONS :
FINANCIAL CORPORATION, :
:
    Defendants.

## **ORDER**

This case comes before the Court on Defendants' Motion to Dismiss for Failure to State a Claim, or, in the Alternative, for a More Definite Statement ("Motion to Dimiss") [4]. After a review of the record, the Court enters the following order.

## **Background**[1]

Plaintiff initiated this pro se civil action on August 23, 2011 in the

---

[1] As the case is before the Court on a motion to dismiss, the facts alleged in the Complaint are taken as true. Cooper v. Pate, 378 U.S. 546, 546 (1964).

Superior Court of Lumpkin County, alleging two counts[2] of fraud arising out of Plaintiff's loan transaction with Defendant Regions Bank ("Regions"). Defendants timely removed the case to this Court ( Notice of Removal, Dkt. [1] at 1) and now move to dismiss the Complaint for failure to state a claim upon which relief may be granted.

The allegations of the Complaint are as follows. In March of 2007, Plaintiff received a $200,000 construction loan from Regions. (Compl., Dkt. [1-2] at 2.) As part of the loan application process, Plaintiff provided Regions with an estimate of his construction costs, which estimate was $3,500 more than the requested loan amount of $200,000. (Id.) When his construction loan initially was approved, a Regions employee, Ken Crenshaw ("Crenshaw"), gave Plaintiff an estimate of his closing costs. (Id.) At the closing of the loan, however, Plaintiff was "surprised to discover" that his closing costs were $3,500 "over what he had been quoted." (Id. at 2.) Crenshaw explained that

---

[2] The Complaint contains three "Counts," each of which appears to raise a separate claim for fraud. As discussed in Part I.B., infra, Plaintiff concedes that Count III is not intended to set out a separate claim for relief but rather is supportive of the claims raised in Counts I and II. Accordingly, the Court need only consider whether Plaintiff has stated a claim for relief in Counts I and II.

2

the extra $3,500 was a "surcharge" required by federal banking regulations because of Plaintiff's overestimation of his construction costs. (Id.)

Plaintiff alleges that he initially refused to close on the construction loan unless the $3,500 discrepancy was corrected. (Id. at 3.) Eventually, however, Plaintiff "reluctantly agreed" to pay the excess $3,500 "if Regions would agree to reduce Plaintiff's <u>beginning</u> loan balance by the same amount." (Id. (emphasis in original).) Plaintiff alleges that although Crenshaw agreed to this demand, his original loan balance never was reduced. (Id. at 3-4.)

Plaintiff further alleges that on April 30, 2008, he closed on a permanent loan with Regions. (Id. at 4.) Plaintiff alleges that at the closing of the permanent loan, he was "rushed through the process with no explanation of, nor time to do anything but glance at, the pages dealing with the specific terms of the promissory note . . . ." (Id.) Plaintiff describes the permanent loan as a three year adjustable rate mortgage (ARM) "with lender option to adjust rate at 3 year intervals" (with an "Option Arm"). (Id. at 4-5.) Plaintiff alleges that because he was rushed through the closing process, and because of the ambiguous language of the Option Arm, he was unable to understand the meaning and consequences of the Option Arm. (Id. at 5.)

3

Plaintiff also alleges that the permanent loan did not utilize one of the customary variable rate indices with which Plaintiff was familiar based on his prior experience with ARM loans. (Id.) On the contrary, Plaintiff alleges that the permanent loan utilized a fixed rate index to calculate future rate changes. Id. Plaintiff describes this index as the "Federal National Mortgage Association's required net yield for 30-year fixed rate (Actual/Actual) subject to 60-day mandatory delivery commitment, as made available by Federal National Mortgage Association." (Id. at 5-6.) Plaintiff alleges that although he was not familiar with this index, "he had confidence in [its] appropriateness . . . for his loan" because it was provided for by Fannie Mae. (Id. at 5-6.)

Based on the foregoing allegations, Plaintiff asserts two claims for fraud against Regions. In Count I of the Complaint, Plaintiff alleges that Regions "intentionally defraud[ed] Plaintiff in the amount of [$3,500]"–the amount by which the costs of closing on the construction loan exceeded Plaintiff's expectations. (Id. at 9.) In Count II, Plaintiff makes several assertions. First, Plaintiff alleges that Regions used "ambiguous and deceptive language to disguise the fact that the Plaintiff's loan was in fact and [sic] 'OPTION ARM' loan." (Id. at 9.) Relatedly, Plaintiff alleges that Regions "employed the usual

4

predatory practices of hurriedly shuffling papers past the Plaintiff and requiring only his initials instead of a signature . . . in order to further obscure this critical provision of Plaintiff's loan." (Id.) Finally, Plaintiff alleges that "the index provided for in Plaintiff's Loan Conversion is fraudulent." (Id.) Specifically, Plaintiff contends that Regions's use of an index "based on fixed rates rather than short term variable rates (as all other ARM indices are based) constitutes Prima Facie fraud against the Plaintiff." (Id. at 10.) (See also id. at 11 ("Regions . . . ignores Federal Regulations in using an inappropriate Index which has caused Plaintiff financial losses . . . .") (emphasis in original).) Plaintiff alleges that Regions deceived Plaintiff with respect to this index by using a two percent margin, which margin is consistent with variable rate indices. (Id. at 10.) The Court considers whether Plaintiff has stated a claim for fraud in either Count of his Complaint.

## Discussion

**I. Preliminary Matters**

    A. <u>Defendants' Motion to Dismiss the Complaint against Defendant Regions Financial Corporation</u>

5

As a threshold matter, Defendants move to dismiss the Complaint against Defendant Regions Financial Corporation on grounds that none of the allegations in the Complaint pertain to this Defendant; accordingly, Defendants argue, Plaintiff cannot state a claim for relief against this Defendant. (See Defs.' Mem. in Supp. of Mot. to Dismiss ("Defs.' Mem."), Dkt. [4-1] at 2 ("The Complaint describes Regions Financial Corporation as the 'parent company to Regions Bank,' but does not allege any acts or omissions by Regions Financial Corporation, much less any actions which harmed the Plaintiff.") (quoting Compl., Dkt. [1-2] at 1.).) Plaintiff does not respond to Defendants' motion to dismiss the Complaint against Regions Financial, and therefore, to this extent, Defendants' motion is deemed unopposed. LR 7.1B, NDGa.

The Court agrees with Defendants that there are no factual allegations in the Complaint that could support a claim for relief against Defendant Regions Financial Corporation. Accordingly, and in light of the fact that the motion is unopposed, Defendants' Motion to Dismiss [4] is **GRANTED** as to Defendant Regions Financial Corporation, which is hereby **DISMISSED** from the suit.

B. Defendants' Motion to Dismiss Count III

As another threshold matter, Plaintiff concedes that Count III of the

6

Complaint is not intended to set out a separate claim for relief but rather is "supportive" of the other two counts of the Complaint. (See Pl.'s Resp. to Defs.' Mot. to Dismiss ("Pl.'s Resp."), Dkt. [5] at 10 ("Plaintiff's Count Three does not state a claim but is supportive in nature . . . .").) Accordingly, Defendants' Motion to Dismiss [4] is **GRANTED** as to Count III of the Complaint, which Plaintiff concedes fails to state a claim upon which relief may be granted. The Court will consider the allegations set forth in Count III only to the extent they support Plaintiff's claims for relief set out in Counts I and II.

**II.    Defendants' Motion to Dismiss Counts I and II**

A.    Legal Standard

When considering a Rule 12(b)(6) motion to dismiss, a federal court is to accept as true "all facts set forth in the plaintiff's complaint." Grossman v. Nationsbank, N.A., 225 F.3d 1228, 1231 (11th Cir. 2000) (citation omitted). The court must also draw all reasonable inferences in the light most favorable to the plaintiff. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-56 (2007) (internal citations omitted); Bryant v. Avado Brands, Inc., 187 F.3d 1271, 1273 n.1 (11th Cir. 1999). However, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will

7

not do.'" Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Id.

The United States Supreme Court has dispensed with the rule that a complaint may only be dismissed under Rule 12(b)(6) when "'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Twombly, 127 U.S. at 561 (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). The Supreme Court has replaced that rule with the "plausibility standard," which requires factual allegations to "raise the right to relief above the speculative level." Id. at 556. The plausibility standard "does not[, however,] impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence [supporting the claim]." Id.

However, because Plaintiff is acting pro se, his "pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed." Tennenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir. 1998). "This leniency, however, does not require or allow courts to

8

rewrite an otherwise deficient pleading in order to sustain an action." Thomas v. Pentagon Fed. Credit Union, 393 F. App'x 635, 637 (11th Cir. 2010).

Having already dismissed Count III, the Court need only consider Defendants' Motion to Dismiss as to Counts I and II. As explained in the Background section, supra, both of these Counts purport to raise a claim for fraud based on Plaintiff's dealings with Regions. The considers each Count, in turn.

### B. Analysis

#### *i. Count I*

In Count I of the Complaint, Plaintiff alleges that Regions intentionally defrauded Plaintiff of $3,500–the amount by which his closing costs exceeded what Plaintiff had been quoted. (Dkt. [1-2] at 8-9.) As Defendants point out (Defs.' Mem., Dkt. [4] at 8-10), it is unclear from the face of the Complaint whether this fraud claim is based on the allegation that Regions inflated Plaintiff's closing costs, or on the allegation that Regions made an extra-contractual promise to lower Plaintiff's original loan balance in exchange for the inflated closing costs. In response to Defendants' motion, however, Plaintiff clarifies his Count I fraud theory as follows:

9

> The fact that [the construction loan agreement's Settlement Statement] included an additional $3,500 in costs through a fraudulent item described as construction costs (not normally found on settlement statements) shows that *on its face the Settlement Statement included within the Construction Loan Agreement was a fraudulent document*. . . .
>
> Plaintiff's Complaint contends that in order to get Plaintiff to complete the closing of the subject loan, Regions Bank's Loan Originator, despite his representation that the overcharge on the Settlement Statement was a Federal Banking Regulation, agreed to reduce Plaintiff's original balance on the loan by $3,500 to compensate for the over charge in the closing costs. This contention is . . . *supportive* and goes to the issue of whether Plaintiff ultimately suffered any damages.
>
> *Plaintiffs [sic] Clearly Stated Claim is that Regions Bank's Settlement Statement (part of the Construction Loan Contract) was inherently and on its face <u>fraudulent</u>*.

(Pl.'s Resp., Dkt. [5] at 8 (underline in original) (italics added).) Thus, Plaintiff's claim appears to be that the alleged misstatement of Plaintiff's closing costs was itself fraudulent. (See also id. at 10-11 ("[T]he fraud occurs within the written documents themselves and Plaintiff's claims for fraud do not include any representations that are not within the written instrument or its ancillary documents binding both parties.").)

Defendants move to dismiss Count I on grounds that Plaintiff recognized the alleged misstatement of his closing costs prior to closing on the permanent

10

loan and therefore cannot show reliance–an essential element of a claim for fraud. (Defs.' Mem., Dkt. [4-1] at 9.) In their Reply Brief, Defendants further argue that Count I should be dismissed because Plaintiff has not alleged a misrepresentation–another essential element of the claim for fraud. (Defs.' Reply Br. in Supp. Mot. to Dismiss ("Defs.' Reply"), Dkt. [9] at 5.) Defendants argue that to state a claim for fraud based on a written representation, Plaintiff must allege–in essence–that Defendants "wrote one thing, and intended to do another" (id.)–i.e., a misrepresentation. In this case, Defendants argue, Plaintiff has alleged that Defendants enforced Plaintiff's contract as written: "Plaintiff has alleged that Regions charged him the allegedly overstated closing costs contained on the settlement statement. . . . A party: (1) making a statement in writing; and (2) doing what is stated in the writing is the antithesis of fraud. Restated, Plaintiff is angry because Regions enforced the contracts as written." (Id.) Defendants argue that absent unusual circumstances, not present in this case, a party cannot state a claim for fraud based on the terms of a written contract. (Id. at 6.)

The Court agrees with Defendants that Plaintiff has failed to state a claim for fraud because Plaintiff has not alleged a misrepresentation or justifiable

11

reliance–two essential elements of a claim for fraud. To state a claim for fraud under Georgia law, a claimant must allege "(1) a false representation or omission of a material fact; (2) scienter; (3) intention to induce the party claiming fraud to act or refrain from acting; (4) justifiable reliance; and (5) damages." Collins v. Regions Bank, 639 S.E.2d 626, 628 (Ga. Ct. App. 2006). First, Plaintiff has failed to allege that his closing costs were falsely represented to him in the loan document. On the contrary, Plaintiff alleges that the loan document represented his closing costs to be $3,500 over what he was quoted and that Plaintiff was charged the exact same amount. Thus, as Defendants argue, Plaintiff has alleged only that Regions enforced his contract as written. While Plaintiff contends his closing costs were too high, the value of his closing costs were not falsely represented to him in the loan agreement.

Furthermore, even if Plaintiff has alleged an actionable misrepresentation, he has failed to allege justifiable reliance and therefore cannot state a claim for fraud. In this case, Plaintiff alleges that he recognized the representation of his closing costs to be $3,500 too high. He alleges that because of the inflated closing costs, he initially refused to close on the loan; he subsequently agreed to pay those costs, reluctantly, in exchange for an extra-

12

contractual promise that Plaintiff concedes is not the subject of his claim for fraud. Rather than reasonably relying to his detriment on the statement of his closing costs in the loan agreement, Plaintiff recognized that statement to be wrong, protested against it, and eventually chose to agree to it. Absent an allegation of reliance, Plaintiff cannot state a claim for fraud. See, e.g., Bickerstaff Real Estate Mgmt, LLC v. Hanners, 665 S.E.2d 705, 710 (Ga. Ct. App. 2008) (holding fraud claim to fail as matter of law due to plaintiff's failure to show justifiable reliance where plaintiff was aware of defect that defendant allegedly concealed).

### ii. *Count II*

In Count II of the Complaint, Plaintiff makes several allegations related to the closing of the permanent loan agreement. As stated in the Background section, supra, Plaintiff alleges that Regions (1) used ambiguous and deceptive language to disguise the fact that the permanent loan was an "Option Arm" loan; (2) employed "predatory practices" to hurry Plaintiff through the closing process in order to further obscure the meaning of the "Option Arm"; and (3) used a "fraudulent" fixed rate index instead of a more typical variable rate index, which Defendant disguised from Plaintiff by using a two percent margin

13

commonly associated with variable rate indices. (Compl., Dkt. [1-2] at 9-11.)
In response to Defendants' Motion to Dismiss, Plaintiff clarifies his Count II
fraud claim as follows:

> *Regions Bank's permanent Loan Modification Agreement was within its context and on its face a fraudulent document due to the fact that it included an improper and deceptive Fixed Rate Index* (Fannie Mae, RNY Index) instead of a typical Variable Rate Index. . . .
>
> Plaintiff's Complaint contends that Regions Bank disguised its predatory "OPTION ARM" through ambiguous language . . . . This contention is purely supportive in nature and is meant only to show a <u>pattern of deceptive practices</u>. . . .
>
> *Plaintiff's clearly stated claim is that Regions Bank's Loan Modification Agreement is inherently and on its face a fraudulent document*.

(Pl.'s Resp., Dkt. [5] at 9-10 (underline in original) (italics added).)

Defendants move to dismiss Count II on grounds that Plaintiff cannot state a claim for fraud based on the plain terms of his contract. (Defs.' Mem., Dkt. [4-1] at 12.) Defendants argue that Plaintiff had a duty to exercise "ordinary diligence" to independently verify the terms of his contract and ascertain their meaning and cannot claim fraud as a result of his failure to do so. (Id.) By way of reply, Defendants further contend that as in Count I, Plaintiff

14

has failed to allege any misrepresentation; on the contrary, Defendants argue, Plaintiff has alleged that Defendants enforced the contract as written, albeit with an allegedly improper index. (Defs.' Reply, Dkt. [9] at 4-6.)

The Court agrees with Defendants that Plaintiff has failed to state a claim for fraud because Plaintiff has failed to allege, among other things, a false representation. On the contrary, Plaintiff alleges that the permanent loan document contained a fixed rate index and two percent margin and was enforced accordingly. Although Plaintiff complains that the index and margin were improper and caused him financial loss, Regions's use of that index and margin, according to the plain terms of the contract, does not constitute fraud. See, e.g., Irvin Int'l, Inc. v. Riverwood Int'l Corp., 683 S.E.2d 158, 163 (Ga. Ct. App. 2009) ("In the absence of a special relationship or confidence between parties, a matter equally open to the observation of all parties, *such as the terms of a written contract*, will generally not support a claim for fraud.") (emphasis in original) (internal quotation marks and citation omitted). Relatedly, Plaintiff's allegation that Regions deceived Plaintiff as to the type of index used in the loan by using a two percent margin does not support a claim for fraud. The terms of the loan were made known to Plaintiff, and Plaintiff had a duty to

15

exercise ordinary diligence to understand them. Rainey v. GAFVT Motors, Inc., 604 S.E.2d 840, 843 (Ga. Ct. App. 2004) ("One cannot claim to be defrauded about a matter equally open to the observation of all parties where no special relation of trust or confidence exists. Further, in the absence of special circumstances, one must exercise ordinary diligence in making an independent verification of contractual terms and representations.").

## Conclusion

In accordance with the foregoing, Defendants' Motion to Dismiss for Failure to State a Claim [4] is **GRANTED**. Defendants' alternative Motion for a More Definite Statement [4] is **DENIED as moot**.

**SO ORDERED**, this  5th  day of June, 2012.

_____
RICHARD W. STORY
UNITED STATES DISTRICT JUDGE

AO 72A
(Rev.8/82)